UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLIFFORD GEORGE,

          Petitioner,

    vs.

J. SOTO,

          Movant.

No.  2:13-cv-0030 GEB EFB P

FINDINGS AND RECOMMENDATIONS

       Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on July 10, 2009, in the Sacramento County Superior Court for possession of a weapon by an inmate.  He seeks federal habeas relief on the following grounds: (1) the trial court violated his right to due process when it excluded from evidence an exculpatory declaration from his cellmate; (2) the trial court violated his right to due process when it denied his motion to dismiss one of the counts against him; and (3) the combined effect of errors at his trial violated his right to due process.  Upon careful consideration of the record and the applicable law, it is recommended that the petition be denied.

/////

/////

/////

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant Clifford George of one count of possessing a dirk or dagger while confined in prison. (Pen.Code, § 4502, subd. (a); further undesignated statutory references are to the Penal Code.)  The trial court found that defendant had three prior serious felony convictions within the meaning of the "three strikes" law.  (§§ 667, subds.(b)-(i), 1170.12.)  Consequently, the court sentenced defendant to a prison term of 25 years to life, consecutive to the sentence he was already serving.
>
> On appeal, defendant contends (1) the trial court abused its discretion by precluding the defense from introducing a declaration in which his cellmate admitted responsibility for one of the weapons, (2) the court erred by allowing a second count, which pertained to another weapon found in the cell, to be considered by the jury, and (3) the cumulative prejudice of the alleged errors compels reversal of the judgment.
>
> We conclude that the trial court did not err in finding the cellmate's declaration insufficiently untrustworthy to be admissible as a declaration against penal interest.   We also reject defendant's second contention because he was acquitted of the charge that he complains was improperly submitted to the jury.  Finding no error, we shall affirm the judgment.
>
> **FACTUAL AND PROCEDURAL HISTORY**
>
> **Prosecution Evidence**
>
> On the morning of March 2, 2007, Correctional Sergeant (now Lieutenant) Sam Banke and Officer Anthony McNeal conducted a search of a cell in Folsom Prison that housed defendant and another inmate, Christopher Edwards.  When the officers entered the cell, defendant appeared to be asleep on the bottom bunk.  Defendant was lying on his stomach with his hands underneath his pillow.  Edwards was lying on the top bunk, also apparently asleep.
>
> Sergeant Banke positioned himself at the cell's entrance and instructed defendant to get out of bed.  As a matter of standard protocol, officers move only one inmate at a time.   Only after repeated orders by Sergeant Banke and Officer McNeal did defendant slowly sit up in bed.  Unbidden, Edwards also began to sit up on the upper bunk.  Edwards was instructed to remain seated on his bunk.
>
> Officer McNeal ordered defendant to stand up.   The officer carefully watched defendant as he rose from the bottom bunk and came toward him.   Nothing obstructed the officer's view of

2

defendant's movements.  Defendant was handcuffed and placed in another holding cell with the assistance of Officer Pulley.

Once defendant was removed from the cell, Sergeant Banke instructed Edwards to come down from the top bunk with his hands where the sergeant could see them.  Sergeant Banke and Officer McNeal carefully watched as Edwards complied.  Sergeant Banke did not see anything in Edwards's hands.  Likewise, Officer McNeal did not see Edwards with anything in his hands or get rid of anything that he had been holding.  Edwards made no motion toward the lower bunk on which defendant had been sleeping.  Edwards was removed from the cell by Officer de Rosa.

Sergeant Banke and Officer McNeal searched the cell.  Taped to the bottom of the cell door, Officer McNeal found an inmate-manufactured weapon.  The weapon consisted of small, round metal stock that was about three or four inches long and ground to a point at one end.  Blue cloth was wrapped around it to form a handle.

Officer McNeal found another inmate-manufactured weapon underneath the pillow on which defendant had been lying.  The weapon was a seven-inch knife with a blade of approximately four inches.  The knife was out of its sheath when found.

Sergeant Banke and Officer McNeal testified that inmate-manufactured weapons are hidden by inmates throughout the prison.  The cell that housed defendant and Edwards is located in a building with approximately 29 to 32 cells on each of five tiers.  Two inmates are housed in each cell.

During the day, inmates move throughout the cellblock and have access to other cells on their tier.  Even so, Officer Banke testified that it would be easier to hide the weapon found under the door from inside the cell when no one was around, rather than to attempt to conceal the weapon when the door was open and staff patrolled the tier.

No fingerprint impressions were found on either weapon.

**Defense Evidence**

Defendant testified on his own behalf and admitted three prior robbery convictions as well as a conviction for possession of cocaine for sale.  Defendant had known Edwards since October 2004.  They had been cellmates for almost a year prior to the search.

Defendant acknowledged that nothing blocked Sergeant Banke and Officer McNeal from observing defendant lying on his bed once the officers entered the cell.  However, defendant also stated, "You can't really see anything in there" because the cells are dark and he had boxes and a sheet at the foot of the bed to block outside light.

Defendant denied having any prior knowledge about either of the weapons found in his cell.  He first learned of the weapons when

3

> Sergeant Banke and Officer McNeal came to his temporary holding cell to tell him that he had been issued a "115," which is "like a ticket."[1]
>
> Defendant explained that each day the cell door was open for many hours when he and Edwards were not present.  The cellblock, is large, and defendant estimated that it housed about 1,200 inmates at the time of the search.  Only one correctional officer is on duty at any time to control multiple tiers.  During the day, there is a great deal of activity in the cellblock with inmates going to their work assignments, classes, showers, meals, to make phone calls, and to pick up necessities.  Thus, one of the hundreds of other inmates in the cellblock could have hidden the weapon under the cell door.
>
> Defendant asserted that the weapon found under the door had to have been taped to the bottom of the cell door from the outside when the door stood open.  He explained that there was not adequate clearance from the cell floor to reach under the door when it was closed.  However, when the door stood open, it came to rest about a foot above the outside floor.
>
> Defendant admitted that the position in which he was sleeping when the officers came into his cell meant that he probably would have felt a weapon if it had been under his pillow.  However, he denied prior knowledge of the knife found under his pillow.

*People v. George*, No. C062882, 2011 WL 2347580 at **1-3 (Cal.App.3d Dist. June 14, 2011).[2]

After his judgment of conviction was affirmed by the California Court of Appeal, petitioner filed a petition for review in the California Supreme Court. ECF No. 1-3 at 41.  That petition was summarily denied. *Id.*

Petitioner then filed a petition for writ of habeas corpus in the Sacramento County Superior Court, raising the same three claims he had raised on direct appeal. *Id.* at 48-49.  Citing *In re Waltreus*, 62 Cal.2d 218 (1965) and *In re Harris*, 5 Cal.4th 813, 829 (1993), the Superior Court denied that petition on the grounds that the claims raised therein had been raised and rejected on appeal. *Id.* at 49.  In its order denying the habeas petition, the Superior Court described the background to petitioner's claims as follows:

---

[1] The Department of Corrections and Rehabilitation uses a "115" as a way by which to "document[ ] misconduct that is 'believed to be a violation of law or is not minor in nature.' (Cal. Code Regs. tit. 15, § 3312, subd. (a)(3).)" *In re Reed* (2009) 171 Cal.App.4th 1071, 1077 & fn. 2.

[2] In addition, by way of background, petitioner informs the court that, while both he and Edwards were convicted in prison disciplinary proceedings of possessing both knives, only petitioner was criminally prosecuted on those charges. ECF No. 1-2 at 11.

4

In Case No. 07F07012, Steven C. Sanders represented petitioner at jury trial, at which time petitioner was convicted of one count of Penal Code § 4502(a) possession by a prisoner of a dirk or dagger found under petitioner's pillow; the jury acquitted petitioner, however, of a second charge, that of possessing an inmate-manufactured weapon found under the cell door.  The trial court found true three "strike priors," and sentenced petitioner to 25 years to life, to be served consecutively to the sentence petitioner was already serving.

At trial, Sanders asked the court to admit a "confession" by petitioner's cellmate, that the cellmate had actually been the one possessing the knife found under petitioner's pillow, after the cellmate invoked his Fifth Amendment privilege not to testify when called to the stand.  However, the "confession" was drafted and signed long after the cellmate had had his own in-prison disciplinary hearing on the matter, at which time the cellmate made no such confession; further, the cellmate was serving a 40-years-to-life sentence, did not expect to become eligible for parole under age 71, and had nothing to lose and everything to gain in prison inmate respect by signing the confession.  As such, the trial court found the confession to not be trustworthy and not be a statement against penal interest.

*Id.* at 48.  Petitioner subsequently filed a request for reconsideration of the Superior Court's order, which was denied on August 7, 2012.  *Id.* at 52.

Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal, which was summarily denied.  Answer, Ex. 10.  He subsequently filed a habeas petition in the California Supreme Court, which was also summarily denied.  Answer, Ex. 11.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

/////

/////

/////

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

1    Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

2    writ if the state court identifies the correct governing legal principle from the Supreme Court's

3    decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]  *Lockyer v.*

4    *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

5    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

6    court concludes in its independent judgment that the relevant state-court decision applied clearly

7    established federal law erroneously or incorrectly.  Rather, that application must also be

8    unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

9    (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

10   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

11   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

12   'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

13   *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

14   652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

15   court, a state prisoner must show that the state court's ruling on the claim being presented in

16   federal court was so lacking in justification that there was an error well understood and

17   comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131

18   S. Ct. at 786-87.

19        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

20   court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

21   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

22   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

23   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

24   de novo the constitutional issues raised.").

25   /////

26   _____

27        [3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible

1  fairminded jurists could disagree that those arguments or theories are inconsistent with the

2  holding in a prior decision of [the Supreme] Court." *Id.* at 786.  The petitioner bears "the burden

3  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

4  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

5       When it is clear, however, that a state court has not reached the merits of a petitioner's

6  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

7  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

8  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

9  **III. Petitioner's Claims**

10      **A.  Exclusion of Evidence**

11       In his first ground for relief, petitioner claims that the trial court violated his federal rights

12  to due process and to present a defense when it excluded from evidence a declaration by his

13  cellmate admitting ownership of the knife found under petitioner's pillow.  ECF No. 1-2 at 7-9,

14  21-60.[4]

15       The California Court of Appeal denied this claim, reasoning as follows:

16      **I.   Claimed   Error   in   Exclusion   of   Edwards's   Written**
        **Declaration**

17

18      Defendant contends the trial court erred in excluding a written
        declaration, signed under penalty of perjury, in which Edwards

19      asserted that he was responsible for the knife found under
        defendant's pillow.  We reject the contention.

20      **A**

21      When called by the defense to testify, Edwards invoked his Fifth
        Amendment right against self-incrimination.   The defense then

22      sought to introduce a written declaration signed by Edwards in
        which he admitted that the knife was his.  The prosecution opposed

23      the   admission   of   the   declaration   on   grounds   that   it   was
        untrustworthy.

24

25      Outside the presence of the jury, the defense called inmate Glenn
        Robison to testify about the circumstances giving rise to the

26      declaration by Edwards.  Robison testified that he was an inmate in
        Folsom Prison and had been convicted of petty theft with a prior (§

27

28      [4] Page number citations such as this one are to the page numbers reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

666) and failure to appear. About a week after Edwards was released from administrative segregation, he told Robison that he "felt responsible for the weapon under George's pillow." Two or three weeks later, defendant told Robison that Edwards wanted to sign a declaration to accept responsibility for the weapon found in defendant's bed.

Around December 20, 2007, Robison contacted Edwards about the declaration. Defendant was not present, and Edwards did not appear to be coerced or under duress. Edwards wanted the declaration to explain "how the weapons really came about to be placed inside the cell" and dictated the declaration to Robison. Edwards appeared to be sincere in explaining that defendant should not take the blame for something that was Edwards's responsibility.

The first declaration had a typographical error in it, so Robison retyped it and met with Edwards two or three days later to have him sign. Edwards signed the declaration and Robison signed as a witness. In pertinent part, the declaration states, verbatim: "[D]uring the time that I was ordered down from the top bunk, I was in possession of a prison made weapon, and as I climbed down, I was again order[ed] to move out of the cell, I panic[ed], then bent down at the end of the bunk to put on shoes, which is at the end of the cell, where my shoe lies under the bottom bunk, bent down and slide [sic] the weapon found under the pillow that inmate George was lying on."

At the time Edwards signed the declaration, Robison thought the 115 against Edwards was still pending. Edwards later told Robison that he had been found guilty of the 115.

About two or three weeks after signing the declaration, Edwards told Robison that he thought the statute of limitations had run on the charge of being an inmate in possession of a weapon. Nonetheless, Edwards asked Robison to research the applicable statute of limitations. Robison, who had access to the prison law library, concluded that a three-year period applied. When Robison informed Edwards that the statute of limitations had not yet run, Edwards did not appear surprised.

In submitting the issue of the declaration's admissibility for the trial court's decision, the parties stipulated: "Edwards has been convicted of four burglaries: Three of which are first degree residential burglaries. [¶] Because of these convictions, he falls under the three strikes statute, was sentenced to 40 years to life state prison in 1997. [¶] Edwards [sic] earliest projected release date is October 13th of 2033. On that date, he will be 71 years old. [¶] Edwards' 115 hearing date was held on October 8th 2007 before Lieutenant Anthony Gentilly (phonetic). [¶] Prior to that hearing, Edwards was provided with reports detailing the correctional officer's discovery of two weapons in he and George's cell, March 2nd, 2007. [¶] One weapon taped under the cell door, and one weapon under a pillow Inmate George was sleeping on. [¶] Edwards was given an opportunity to call witnesses, make a statement himself at the hearing. [¶] At that hearing, the only

statement he made was, quote, there is no way that piece, end parenthesis, added, inmate manufactured weapon would fit under the door, end of quote. [¶]   At that hearing, Inmate Edwards never admitted the weapon found underneath George's pillow was his."

The trial court found that Edwards was an unavailable witness after he invoked his Fifth Amendment right to refuse to testify. However, the trial court excluded the declaration signed by Edwards.  In so ruling, the court explained: "An initial threshold issue in this case is whether the statement is reliable or trustworthy sufficiently such that the matter can go before the jury.

"To determine trustworthiness, the Court may take into consideration the circumstances and possible motivation of the defendant, and the declarant's relationship to the defendant.

"Based upon the Court's evaluation of the utterance, court finds that the statement lacks sufficient reliability or trustworthiness to permit its admission, and finds it is not properly admissible under Evidence Code Section 1230.

"The statement from Mr. Edwards was prepared and submitted for us in Mr. George's criminal prosecution, the statement was not a spontaneous statement made under circumstances that would indicate its reliability.   It was in fact prepared possibly eight months, possibly more after the occurrence itself.

"The declarations itself is addressed to Mr. George, and I think its [sic] interesting to note that Mr. Robison went to Mr. Edwards in response to a request by Mr. George.

"Both Mr. George and Mr. Edwards had been cellmates at the time, and there doesn't appear to be any evidence of animosity between the two that would indicate that the statement is trustworthy.  More importantly, the declaration, apparently, was executed after the declarant had been prosecuted for a 115.

"There was no further arresting at that time, that the defendant would receive administrative sanctions.

"And I think it's reasonable to assume that given the timing of the declaration, and the date of the occurrence, that Mr. Edwards could have easily – and I think the circumstances suggest that he assumed that he would not be subject to criminal prosecution at least at the time of the utterance.

"It is interesting to note that Mr. Robison initially indicated, although I agree Mr. Robison is confused with a number of things, he did indicate that at the time that Mr. Edwards provided the statement to Mr. Robison, the initial statement that Mr. Robison indicated was Edwards thought the statute of limitations had run out.  And then subsequent to testifying to that, he indicated that a couple of weeks later there was a discussion between the two involving what the true statute of limitations was.

"Obviously, that would reconcile with the fact that now Mr. Edwards is assuming – or taking the Fifth Amendment at this time. So it would seem consistent, at least, that Mr. Edwards gave a statement at the time he believed the statute of limitations had run out, or that he was no longer subject to criminal prosecution, or the alternative as Mr. Harry has indicated, he simply didn't care because of the fact that he's doing a life sentence at this point.

"So the Court finds there is insufficient indicia of reliability to permit admission of the statement, the evidence would suggest the statement is unreliable and to [present] its admission would be misleading to the jury.

"Independent from this Court's determination the statement is unreliable, the Court would also find that the statement is not a statement against penal interest.  Although, the Defense Exhibit contains a statement where declarant admits to possessing one of the weapons found in the cell, give[n the] circumstances under which the statements were made, the Court does not find that statement is such that a reasonable person would have [sic] made that statement unless it were true.

"This is one of those unusual cases where in fact the contrary is true: Circumstances under which the declaration was prepared, suggests that the statement was specifically designed to exonerate the defendant made by a declarant who had already been punished for it – his involvement through administrative proceedings, and no longer either believed he was facing prosecution or frankly did not care if he was prosecuted.

"Unlike typical circumstances where a declaration against penal interests are made, the declarant in this particular case had nothing to lose and perhaps much to gain within the prison culture by providing an exonerating statement to his former cellmate."

**B**

Under Evidence Code section 1200, "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated" is generally inadmissible as hearsay.  However, an exception to the rule against hearsay exists for declarations against penal interest. To this end, Evidence Code section 1230 provides that "[e]vidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, . . .  so far subjected him to the risk of civil or criminal liability, . . .  that a reasonable man in his position would not have made the statement unless he believed it to be true."

The party seeking to admit evidence under this exception "must show that the declarant is unavailable, that the declaration was against the declarant's penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.  (*People v. Lucas* (1995) 12 Cal.4th 415, 462.)"

(*People v. Duarte* (2000) 24 Cal.4th 603, 610–611 (*Duarte*).)   A witness who refuses to testify by invoking the Fifth Amendment privilege against self-incrimination is deemed to be an unavailable witness.  (Evid.Code, § 240, subd. (a)(1).)

To be admissible, a declaration against penal interest "must be 'distinctly' against the declarant's penal interest and must be 'clothed with indicia of reliability.'  (*People v. Shipe* (1975) 49 Cal.App.3d 343, 354.)"  (*People v. Jackson* (1991) 235 Cal.App.3d 1670, 1677–1678.)   As the California Supreme Court has noted, "'the precedents in the hearsay area provide a persuasive reminder that declarations against penal interest may contain self-serving and unreliable information' and, consequently, 'an approach which would find a declarant's statement wholly credible *solely because* it incorporates an admission of criminal culpability is inadequate.'  (*People v. Campa* (1984) 36 Cal.3d 870, 883, italics in original.)   As scholars have observed, "'a self-serving statement lacks trustworthiness whether it accompanies a disserving statement or not.'"  (*People v. Leach* (1975) 15 Cal.3d 419, 439, fn. 15 (*Leach*), quoting *Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule* (1944) 58 Harv. L.Rev. 1, 60.)   Moreover, that a hearsay statement may be facially inculpatory or neutral cannot always be relied upon to indicate whether it is 'truly self-inculpatory, rather than merely [an] attempt[ ] to shift blame or curry favor.'  (*Williamson v. United States* [ (1994) ] 512 U.S. [594,] at p. 603 [129 L.Ed.2d 476] (*Williamson*).)   Even a hearsay statement that is facially inculpatory of the declarant may, when considered in context, also be exculpatory or have a net exculpatory effect.  (*See, e.g., People v. Coble* (1976) 65 Cal.App.3d 187, 191.)   Ultimately, as the high court has noted, 'whether a statement is self-inculpatory or not can only be determined by viewing it in context.'  (*Williamson v. United States, supra*, at p. 603.)"  (*Duarte, supra*, 24 Cal.4th at pp. 611–612.)

"To determine whether the declaration passes the required threshold of trustworthiness, a trial court 'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.'   [Citation.]   On appeal, the trial court's determination on this issue is reviewed for abuse of discretion.  [Citation.]"  (*People v. Cudjo* (1993) 6 Cal.4th 585, 607.)   A trial court abuses its discretion "only when its ruling ""fall[s] "outside the bounds of reason.""'  [Citation.]'  (*People v. Benavides* (2005) 35 Cal.4th 69, 88); *accord, Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [abuse of discretion requires a showing that the trial court ""exceed[ed] the bounds of reason, all of the circumstances before it being considered"']."  (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 736.)

**C**

Hence, there was no abuse of discretion.  The trial court properly found that Edwards was unavailable as a witness once he invoked his Fifth Amendment right against self-incrimination.  (Evid .Code, § 240, subd. (a)(1).)   And the trial court properly determined that

the circumstances of his confinement and the timing of his declaration rendered the declaration untrustworthy.

Given that Edwards's release date would be no earlier than 2033, when he will be 71 years old, the distant possibility of release from custody undermined the incentive to avoid an increased prison sentence.  It was reasonable to conclude that he did not care about the possible additional years in prison that might flow from a conviction for the weapons possession charge.  Moreover, as the trial court noted, Edwards more immediately stood to gain by taking the blame for the offense for defendant.  By helping defendant avoid criminal responsibility, Edwards's declaration was likely to "curry favor" from his cellmate.  (*Williamson, supra*, 512 U.S. at p. 603 [129 L.Ed.2d at p. 485].)

The declaration was more likely to confer immediate advantages to Edwards so that the disadvantage of distant punishment was outweighed.  On this point, it is significant that Edwards did not admit possession of the knife found under defendant's pillow when it would have made an immediate difference to him: during the hearing on his own 115 charge.  Had Edwards been willing to suffer the immediate consequences of a prison disciplinary action, his admission of responsibility would have had a greater aura of reliability.  Instead, Edwards did not admit culpability until later and only for purposes of charges that had little, if any, material consequence.

Defendant points out that Edwards dictated and signed the declaration at a time when even a one-year statute of limitations would have subjected him to criminal prosecution.  However, as we have pointed out, the prospect of additional prison time was not such a significant penalty that it cloaked Edwards's statement with trustworthiness.

Defendant next argues the possibility that Edwards would not care about additional prison time constituted an issue for the jury, rather than the court, to consider.  Not so.  The trial court was required to make a threshold determination about whether the declaration was sufficiently trustworthy to be presented for jury consideration.  (*Duarte, supra*, 24 Cal.4th at pp. 610–611.)  Here, the trial court fulfilled its duty to determine the admissibility of the evidence before it was submitted to the jury.  (*People v. Garcia* (2001) 89 Cal.App.4th 1321, 1336.)  And, as we have explained, the trial court did not abuse its discretion in excluding the declaration as untrustworthy.

As defendant correctly points out, the trial court gave additional reasons for excluding Edwards's declaration.  These additional rationales were that the declaration was (1) offered in a criminal trial, (2) addressed to defendant, (3) made when Edwards went to Robison at defendant's direction, and (4) was not the product of any animosity between defendant and Edwards.  Even if these rationales failed to support the trial court's ruling, the evidentiary ruling nonetheless reached the correct result.  "If a judgment rests on admissible evidence it will not be reversed because the trial court

14

admitted that evidence upon a different theory, a mistaken theory, or one not raised below." (*People v. Brown* (2004) 33 Cal.4th 892, 901.)

The proper exclusion of the declaration undermines defendant's contention that the ruling denied him his federal and state jury trial rights.  A defendant's constitutional rights are not violated by the

exclusion of evidence under the well-established rule against hearsay. (*See People v. Smithey* (1999) 20 Cal.4th 936, 995.)

In sum, the trial court did not abuse its discretion or violate defendant's constitutional rights in excluding Edwards's declaration as insufficiently untrustworthy to be admissible as a statement against penal interest.

*George*, 2011 WL 2347580, at 3-8.

Petitioner argues that the trial judge improperly relied on extra-record facts to support his conclusion that Edwards' declaration was unreliable and therefore inadmissible.  He also argues that the judge improperly usurped the role of the jury to determine the pertinent facts.  ECF No. 1-2 at 8-9.  Petitioner argues, "other than a general predilection to disbelieve a prison inmate, there is no basis in this record to question the veracity of the Edwards declaration or anything testified to by inmate Robison." *Id.* at 24.  Petitioner contends the trial court's decision to exclude his cellmate's declaration was arbitrary, disproportionate, and not justified by the facts before the judge. *Id.* at 27.

Petitioner also argues that the trial court's exclusion of the Edwards declaration eviscerated the only defense available to him: that Edwards was responsible for the knife found under petitioner's pillow. *Id.* at 29.  He argues the judge's decision constituted "the wholesale removal of the defense presentation from the jury, over frankly speculative concerns." *Id.* at 34. Petitioner notes that the trial judge originally was inclined to exclude the declaration based on the Confrontation Clause, but then changed his mind and excluded it on the grounds that it was not reliable. *Id.* at 31.  He contends this provides support for his argument that the reliability of the declaration was apparent on its face.

Petitioner also argues that the trial court's reasons for excluding the declaration were based upon "evidence that could be reasonably interpreted in another manner." *Id.* at 36.  He analyzes each of the judge's stated reasons for excluding the declaration and refutes those reasons

15

1    with his own analysis.  *Id.* at 36- 60.  Petitioner argues, "in the end, the Trial Court judged

2    evidence more harshly than a criminal jury would be able to, and the fact the evidence

3    surrounding the declaration was subject to multiple interpretations, rather than a single unerring

4    one, itself should have established sufficient credibility to allow it to reach a jury."  *Id.* at 38.  He

5    also argues,

6         The Court must keep in focus this was a criminal trial where the
         defendant faced life in prison, for a crime Mr. Edwards admitted
7         committing in writing under penalty of perjury, and for which
         Edwards invoked his *Fifth Amendment* privilege.  To deprive the
8         jury of this **crucial information** seems to miss the point of a jury
         trial.   The error is all the worse when Edwards was the only
9         possible perpetrator beyond petitioner himself.

10   *Id.* at 49.  In the traverse, petitioner summarizes his arguments as follows:  "The trial court

11   violated petitioner's state and federal constitutional right to compulsory process/jury trial in

12   determining that otherwise relevant and material evidence, bearing directly on the sole defense

13   being tendered, should not reach the jury due to speculative trial court concerns about the

14   reliability of that evidence."  ECF No. 18 at 2.[5]

15       Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to

16   present a defense; this right is "a fundamental element of due process of law."  *Washington v.*

17   *Texas*, 388 U.S. 14, 19 (1967).  *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986);

18   *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972).

19   Necessary to the realization of this right is the ability to present evidence, including the testimony

20   of witnesses.  *Washington*, 388 U.S. at 19.  However, the constitutional right to present a defense

21   is not absolute.  *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003).  "Even relevant and

22   reliable evidence can be excluded when the state interest is strong."  *Perry v. Rushen*, 713 F.2d

23   1447, 1450 (9th Cir. 1983).

24   _____

25       [5] Petitioner purports to challenge the decision of the Superior Court on this claim, and
     especially the Superior Court's statement that Edwards "had nothing to lose and everything to
26   gain in prison inmate respect by signing the confession."  ECF No. 1-2 at 21-23.  However, the
     Superior Court did not address the merits of petitioner's claims but denied all of them on the
27   procedural ground that the claims had been raised and rejected on appeal.  The last reasoned
     decision on this claim is the decision of the California Court of Appeal, set forth above.
28   Accordingly, that is the decision this court will analyze for purposes of AEDPA review.

16

State law rules excluding evidence from criminal trials do not abridge a criminal defendant's right to present a defense unless they are "arbitrary" or "disproportionate to the purposes they were designed to serve" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002).  Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).  In general, it has taken "unusually compelling circumstances . . . to outweigh the strong state interest in administration of its trials." *Perry*, 713 F.2d at 1452.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

Here, the trial judge excluded the Edwards declaration on the basis that it was not trustworthy and was therefore not admissible as a hearsay exception under Cal. Evid. Code § 1230.  As explained by the California Court of Appeal, the trial judge was required to exercise his discretion under this hearsay exception to determine whether the Edwards declaration was trustworthy and therefore admissible.  The Court of Appeal specifically found that the trial court "did not abuse its discretion in excluding the declaration as untrustworthy." *George*, 2011 WL 2347580, at *7.  The United States Supreme Court has not "squarely addressed" whether a state court's exercise of discretion to exclude testimony violates a criminal defendant's right to present relevant evidence. *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009).  Nor has it clearly established a "controlling legal standard" for evaluating discretionary decisions to exclude the type of evidence at issue here. *Id.* at 758.  Accordingly, the decision of the California Court of Appeal that the trial court's discretionary evidentiary ruling did not violate the federal constitution is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent and may not be set aside. *Id.  See also Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) ("it is not 'an unreasonable application of' 'clearly established Federal law'

17

1   for a state court to decline to apply a specific legal rule that has not been squarely established by

2   [the United States Supreme Court]"); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per

3   curiam) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions

4   have "given no clear answer to the question presented, let alone one in [the petitioner's] favor,"

5   because the state court cannot be said to have unreasonably applied clearly established Federal

6   law); *Brown v. Horell*, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of *Moses* and

7   the present, the Supreme Court has not decided any case either 'squarely address[ing]' the

8   discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing]

9   a controlling legal standard' for evaluating such exclusions."), *cert. denied* ___ U.S. ___, 2011

10   WL 4901379 (Nov. 14, 2011).

11           In any event, Cal. Evid. Code § 1230, the California Rule of Evidence under which the

12   trial judge excluded the Edwards declaration, is certainly not "arbitrary" or disproportionate to the

13   purposes it was designed to serve. *Scheffer*, 523 U.S. at 308.  Further, the state appellate court's

14   decision that the Edwards declaration was properly excluded as untrustworthy is not unreasonable

15   under the facts of this case, notwithstanding petitioner's arguments regarding alternative

16   interpretations of the evidence before the trial judge.  Certainly the decision of the California

17   Court of Appeal is not "so lacking in justification that there was an error well understood and

18   comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131

19   S.Ct. at 786-87.  As explained by the Court of Appeal, the statements contained in the Edwards

20   declaration were unreliable given the context in which they were made and were not sufficiently

21   against Edwards' penal interests to comply with the statutory hearsay exception.  The court also

22   notes that the arresting prison guards testified they did not see anything in Edwards' hands when

23   he got down from his bunk and exited the cell.  In short, under the circumstances of this case,

24   petitioner has not met his "heavy" burden to show a due process violation resulting from the trial

25   court's decision to exclude the Edwards declaration.  Accordingly, petitioner is not entitled to

26   federal habeas relief on this claim of evidentiary error by the trial court.

27   /////

28   /////

18

**B.  Failure to Dismiss Count Two**

In his second ground for relief, petitioner claims that the trial court violated his right to a fair trial by refusing to dismiss Count Two, which charged him with possession of the knife found under his cell door.  ECF No. 1-2 at 60.  He argues that there was "no way to determine" whether the knife belonged to him, to Edwards, or to another inmate.  *Id.* at 61.  Petitioner also argues that the addition of Count Two added to the unfairness of his trial because "psychologically the jury has a different mental calculus on the case without the Count Two charge clouding its judgment." *Id.* at 64.  He contends that he was charged with Count Two simply to create the improper inference that he "had knives everywhere."  *Id.* at 65.

The California Court of Appeal denied this claim on the grounds that petitioner failed to demonstrate prejudice.  The court explained:

> Defendant contends the trial court erred in submitting the charge relating to the weapon found under the cell door for consideration by the jury.  Even if defendant established some sort of error on this ground, he was acquitted on this charge.  Thus, defendant does not establish prejudice as to count one.  The record shows that the jury properly performed its duties, analyzing each count separately.

*George*, 2011 WL 2347580, at *8.

This court agrees with the conclusion reached by the state appellate court.  Because petitioner was acquitted of count two, he cannot show that any error by the trial court in failing to dismiss this count "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  There is no evidence in the record that the inclusion of Count Two caused the jury to convict petitioner of Count One.  As stated by the Court of Appeal, "the record shows that the jury properly performed its duties, analyzing each count separately."  *George*, 2011 WL 2347580, at *8.  Because petitioner has failed to demonstrate prejudice with respect to this claim, he is not entitled to habeas relief.

**C.  Cumulative Error**

In his final claim, petitioner argues that the combination of errors alleged in his first two grounds for relief violated his right to due process.  ECF No. 1-2 at 66-69.

/////

1    The California Court of Appeal rejected these arguments, reasoning as follows:

2        Finally, defendant contends the cumulative prejudice of the errors
3        he alleges in the exclusion of the declaration and improper
         submission of count two to the jury requires us to reverse the
4        judgment.  Having been acquitted of count two, the only potential
         relief available pertains to defendant's conviction for the knife
5        found under his pillow.  And, as we explained in part I, ante, we
         perceive no error in the trial court's exclusion of Edwards's
6        declaration.  Without any showing of error, there can be no
         prejudice.  (*See People v. Jablonski* (2006) 37 Cal.4th 774, 832.)

7    *George*, 2011 WL 2347580, at *8.

8        The cumulative error doctrine in habeas recognizes that, "even if no single error were

9    prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless

10   be so prejudicial as to require reversal.'"  *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002)

11   (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).  However, where there is no

12   single constitutional error existing, nothing can accumulate to the level of a constitutional

13   violation.  *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011), *cert denied.* ___ U.S. ___,

14   132 S.Ct. 1757 (2012) ("[B]ecause we hold that none of Fairbank's claims rise to the level of

15   constitutional error, 'there is nothing to accumulate to a level of a constitutional violation.'")

16   (citation omitted); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that

17   no error of constitutional magnitude occurred, no cumulative prejudice is possible.").  "The

18   fundamental question in determining whether the combined effect of trial errors violated a

19   defendant's due process rights is whether the errors rendered the criminal defense 'far less

20   persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and thereby had a 'substantial

21   and injurious effect or influence' on the jury's verdict."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th

22   Cir. 2007) (quoting *Brecht*, 507 U.S. at 637).

23       This court has addressed petitioner's claims of error and has concluded that no error of

24   constitutional magnitude occurred.  There is also no evidence that an accumulation of errors

25   rendered petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on

26   his claim that cumulative error violated his right to due process.

27   /////

28   /////

20

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  April 29, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

21